SUSAN B. BY HER GUARDIAN AD LITEM AND LISA S. BY HER GUARDIAN AD LITEM ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED v. GEORGE PLANAVSKY, M.D., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; VIRGINIA RITCHIE, R.N., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; CLAIRE OPPENHEIM, R.N., INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; T. M. HAIZLIP, M.D., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; JETTIE KNICKERBOCKER, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; CYNTHIA SAUBER, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; AND A. G. TOLLEY, M.D., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY

No. 8210SC5

(Filed 21 December 1982)

1. Constitutional Law § 17— summary judgment on claim of denial of access to counsel proper

The trial court properly entered summary judgment as to minor plaintiffs' (42 U.S.C. §§ 1983 and 1985) claims concerning the alleged denial of their rights to or access to counsel of their choice while in a mental institution since the forecast of evidence did not show that defendant medical personnel denied plaintiffs their rights to the advice of counsel.

2. Insane Persons § 13— Rights of Minor Patients Act—defendants not answerable in money damages—defendants not immune from injunctive relief

Pursuant to the provisions of G.S. 122-24, a section of the Rights of Minor Patients Act, defendants, medical personnel at Dorothea Dix Hospital, may not be held answerable in money damages for their acts towards plaintiffs, minor patients; however, defendants are not immune under G.S. 122-24 from plaintiffs' claims for injunctive relief. The question of plaintiffs' entitlement to injunctive relief, however, was mooted by the facts that (1) plaintiffs did not seek an injunction *pendente lite* and (2) by the time the matter came on for hearing, neither plaintiff was a patient at Dix.

3. Infants § 4— duty of mental institution to report child abuse of minor patient

Where the forecast of evidence before the trial court showed one incident of physically offensive conduct between a minor patient at a mental institution and a male staff member wherein the male staff member rubbed his hands on her leg while the two of them were riding in a hospital van, the single, isolated incident of physically offensive conduct, not resulting in any physical harm, did not show a situation involving child abuse requiring a report under G.S. 7A-543.

APPEAL by plaintiffs from *Bailey, Judge.* Judgment entered 26 October 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 19 October 1982.

At all times pertinent to this case, plaintiffs were minors undergoing voluntary treatment as patients at Dorothea Dix

Hospital, a facility operated by the State of North Carolina for the treatment of mentally disordered persons. Defendant Planavsky, a child psychiatrist, was Director of the Adolescent Treatment Program of the Child and Youth Division of Dix Hospital; defendant Ritchie, a licensed registered nurse in psychiatric nursing, was Assistant Program Director and Nursing Coordinator for the Cherry-Ashby Program at Dix, the program in which plaintiffs were enrolled, and was supervised by Planavsky; defendant Oppenheim, a licensed registered nurse in psychiatric nursing, was a Nursing Supervisor and Coordinator of Group Living in the Adolescent Treatment Program at Dix, and was supervised by Ritchie; defendant Haizlip, a child psychiatrist, was Director of the Division of Children and Youth Services at Dix and exercised general supervision over the Cherry-Ashby Adolescent Program; defendant Knickerbocker, a licensed registered nurse, was employed as a nurse in the Adolescent Treatment Program at Dix; defendant Sauber was a Clinical Social Worker in the Adolescent Treatment Program at Dix; and defendant Tolley, a psychiatrist, was the Director of Dix Hospital.

Plaintiffs' complaint, filed 12 March 1981, asserts claims for relief for alleged violations by defendants of plaintiffs' rights under 42 U.S.C. § 1983 (the Civil Rights Act of 1871); 42 U.S.C. § 1985 (Right To Be Free From Conspiracies Act); 20 U.S.C. § 1401 et seq. (Education for All Handicapped Children Act); G.S. 115-363, et seq. (Special Education Act); G.S. 122-55.13 (Rights of Minor Patients Act); and G.S. 7A-543 (Duty To Report Child Abuse Or Neglect Act). Plaintiffs sought to represent a class of similarly situated persons, pursuant to G.S. 1A-1, Rule 23 of the Rules of Civil Procedure. Plaintiffs alleged that they and the members of the alleged class were entitled to declaratory and injunctive relief, and that plaintiffs Susan B. and Lisa S. were entitled to monetary damages. Plaintiffs also prayed for attorneys' fees pursuant to 42 U.S.C. § 1988. The factual allegations in the complaint generally alleged that defendants had conspired to deny and had denied Susan B. and Lisa S. their rights to legal counsel and to independent mental health evaluation while Susan and Lisa were patients at Dix Hospital, and that defendants had conspired to deny and had denied such rights to the alleged class represented by Susan and Lisa.

Defendants answered, asserting affirmative defenses of official standing, good faith, absence of malice, and immunity and

otherwise entering general denials of plaintiffs' essential allegations of defendants' actionable conduct. Defendants also denied plaintiffs' standing to prosecute plaintiffs' action on behalf of a class.

Plaintiffs later amended their complaint to include allegations that plaintiff Lisa S. was denied use of a "program" telephone to contact an attorney, was told that she did not need to see attorney Heinberg because Heinberg was a civil rights lawyer, and that Lisa's activities were restricted for 25 minutes because Lisa failed to notify "staff" of her appointment with legal counsel. These allegations were generally denied.

The record on appeal discloses that plaintiff Susan B. exited her Dorothea Dix Hospital treatment on March 1981 and Lisa S. exited in June 1981. On 10 August 1981, defendants filed their motion for summary judgment. At the time their motion was heard, the trial court had before it the depositions of both plaintiffs, of Anne Crowell, Susan's mother, of Margaret Rundell, Lisa's guardian *ad Litem*, and of defendants Sauber, Oppenheim, Ritchie, Knickerbocker and Planavsky, and the affidavits of defendants Planavsky, Ritchie, Oppenheim, Haizlip, Knickerbocker, Sauber and Tolley. The contents and implications of this evidentiary material will be discussed as necessary in the body of our opinion.

Following a hearing on defendants' motion, Judge Bailey entered summary judgment for all defendants.

The evidentiary context upon which the trial court granted summary judgment for all defendants on all claims for relief is as follows. Susan B. testified on deposition that while she was a patient at Dix, one Craig Robertson, a male staff employee at Dix rubbed his hand on her leg while the two of them were riding in a hospital van. Susan reported the incident to defendant Oppenheim. Following discussions with Oppenheim as to what they should do about the incident, Susan "dropped" her complaint. When Susan was admitted to Dix, she met with Ms. Dorothy Thompson, an attorney, regarding Susan's admissions hearing. Upon request, Susan met with Ms. Thompson subsequent to Susan's admittance. Susan was not punished for meeting with Ms. Thompson. In February, 1981 Susan telephoned Ms. Christine Heinberg and Deborah Greenblatt, attorneys, and met with

Heinberg. Soon thereafter, Susan's "outside" privileges were taken away by defendants Knickerbocker and Oppenheim for about a week.

Lisa S. testified on deposition that she was able to contact attorneys when she desired, but that in February, 1981, after meeting with attorneys Heinberg and Thompson, she lost her "privileges." Lisa also testified that on one occasion, defendant Ritchie told her that Lisa did not need to see attorney Heinberg, that Heinberg was a "civil rights" lawyer, and that Lisa should see the patient advocate.

Margaret Rundell, an attorney who became Lisa's guardian *ad Litem*, testified on deposition that she found contacting Lisa difficult, and that hospital staff members "inhibited" such contact, but that she was able to meet with Lisa frequently.

Anne Crowell, Susan's mother, testified on deposition that while Susan was seeking outside, independent mental health evaluation, defendant Sauber inhibited and resisted such efforts, advising Mrs. Crowell that such evaluations were against "program" policy, and that after Susan began such independent evaluation, defendant Planavsky told Mrs. Crowell that she would have to make an "immediate" decision as to whether Susan would continue as a patient at Dix. Mrs. Crowell testified that Susan was punished for seeking such independent evaluation, implicating defendants Sauber, Knickerbocker and Oppenheim.

Defendants Planavsky and Oppenheim testified on deposition as to the alleged incident between Susan and a male staff member. Planavsky discussed Susan's complaint with Oppenheim and evaluated the situation. Based on his evaluation and Oppenheim's informing him that Susan did not want to pursue the complaint, no report was made of that incident to the Department of Social Services. Because of subsequent incidents involving the same male staff member, the staff member was discharged and a report was submitted to Social Services.

On deposition, defendants Planavsky, Sauber, Oppenheim, Ritchie, and Knickerbocker testified about policy and practices respecting patient's contacts with legal counsel and patient's resort to independent mental health evaluations. Each defendant also addressed these matters with respect to Susan and Lisa.

What may be gleaned from their testimony is that all these defendants were unreceptive to the use of outside legal counsel by plaintiffs and other patients, but did not act so as to prevent plaintiffs from having access to counsel, either "program" counsel or outside counsel. Their testimony did make it clear, however, that patients were not allowed to use hospital staff telephones to call counsel or to receive calls from counsel, but were required to either place their calls through a staff member or to use a pay telephone located on the premises. The pay phone did not have a number on it, thus making it impossible for anyone to call a patient on that phone; therefore, all calls from counsel to a patient would necessarily have to be routed through a staff member. The testimony of these defendants generally reflected an underlying, if not manifest, distrust of patient contact with outside legal counsel. The same must be said for what this evidence shows with respect to their attitude about and reaction to outside, or independent, mental health evaluations for Dix patients.

Defendants Planavsky, Haizlip, Tolley, Knickerbocker, Oppenheim, Ritchie and Sauber submitted affidavits in which they asserted that plaintiffs were treated in accordance with medically accepted and approved standards, practices and procedures and that their actions taken toward plaintiffs were done in good faith, without malice, and with reasonable grounds to believe their actions toward plaintiffs were in accordance with the laws of North Carolina and with Dix Hospital policies, procedures, and practice.

From summary judgment entered in favor of all defendants on all claims for relief, plaintiffs have appealed.

*Carolina Legal Assistance for the Mentally Handicapped, Inc., by Christine Heinberg and Deborah Greenblatt, and Smith, Patterson, Follin, Curtis, James & Harkavy, by Melinda Lawrence, for plaintiffs.*

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General William F. O'Connell and Assistant Attorney General Reginald L. Watkins, for all defendants.*

*Young, Moore, Henderson & Alvis, P.A., by Joseph C. Moore, III, for defendant George Planavsky, M.D.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by John H. Anderson, for defendants A. G. Tolley, M.D. and T. M. Haizlip, M.D.*

WELLS, Judge.

I

Plaintiffs' claims for relief under
42 U.S.C. §§ 1983 and 1985.

[1]   The forecast of evidence in this case does not show that defendants, or any of them, denied plaintiffs their rights to the advice of counsel, but rather shows that plaintiffs sought and obtained the advice and assistance of counsel during plaintiffs' period of commitment to Dix Hospital. While the forecast of evidence does regrettably show that defendants manifested a significant degree of resentment toward and disapproval of plaintiffs' use of "outside" counsel, such resentment and disapproval did not result in a denial of plaintiffs' rights in any respect. Under this forecast of evidence, the trial court correctly entered summary judgment as to plaintiffs' (42 U.S.C. §§ 1983 and 1985) claims on their alleged denial of their rights to or access to counsel of their choice.

II

Plaintiffs' claims for relief under
G.S. 122-55.13 and .14.[1]

[2]   First, we hold that pursuant to the provisions of G.S. 122-24,[2] defendants may not be held answerable in money damages for

---

1. § 122-55.13. *Declaration of policy on rights of minor patients.*

It is the policy of North Carolina to insure basic rights to each minor patient of a treatment facility. These rights include the right to dignity, humane care, and proper adult supervision and guidance. In recognition of his status as a developing individual, the minor shall be provided opportunities to enable him to mature physically, emotionally, intellectually, socially, and vocationally. In view of the physical, emotional, and intellectual immaturity of the minor, the treatment facility shall stand in loco parentis to the minor when he is in residence.

§ 122-55.14. *Rights of minor patients.*

(a) Each minor patient of a treatment facility may at all reasonable times:

(1) Communicate and consult with the agency or individual having legal custody of him; and

their acts towards plaintiffs as alleged in plaintiffs' complaint, all of such acts or actions falling within the provisions of G.S. 122-24. We hold, however, that defendants are not immune under G.S. 122-24 from plaintiffs' claims for injunctive relief; otherwise, the provisions of G.S. 122-55.13 and .14 would be meaningless. It is clear to us from the depositions of Mrs. Crowell and defendants Planavsky, Sauber, and Oppenheim, that there were genuine, material issues of fact raised with respect to Susan B.'s entitlement to injunctive relief as to her need and desire for private mental health evaluation. We are frank to note that the attitude of Dr. Planavsky in this respect — as reflected by Mrs. Crowell's deposition — raises rather serious factual implications with respect to patients' rights to such private mental health advice or treatment. Plaintiffs did not seek an injunction *pendente lite*, however, and by the time this matter came on for hearing before Judge Bailey on defendants' motion for summary judgment, neither plaintiff was a patient at Dix. The question of plaintiffs' entitlement to injunctive relief was mooted by these circumstances, and the trial court therefore properly entered summary judgment as to this aspect of plaintiffs' action.

## III

### Plaintiffs' claims for relief under
### 20 U.S.C. § 1401 et seq. and G.S. 115-363 et seq.

These statutes deal with educational entitlements of handicapped children. While we recognize that mentally disturbed minors are within the statutory classification of handicapped children or children with special needs, neither the allegations in plaintiffs' complaint nor the forecast of evidence shows a valid claim under these statutes. We note that plaintiffs made no at-

---

(2) Communicate and consult with legal counsel and private mental health or mental retardation specialists of his or his legal custodian's or guardian's choice, at his own expense.

2. § 122-24. *Administrators, chiefs of medical services and staff members not personally liable.*

No administrator, chief of medical services or any staff member under the supervision and direction of the administrator or chief of medical services of any State hospital shall be personally liable for any act or thing done under or in pursuance of any of the provisions of this Chapter.

tempt in their brief to support these claims with argument or authority. Summary judgment as to these claims was properly entered.

IV

Plaintiff Susan B.'s Claim
for relief under G.S. 7A-543.

[3]   The statute, in pertinent part, provides:

§ 7A-543. *Duty to report child abuse or neglect.*

Any person or institution who has cause to suspect that any juvenile is abused or neglected shall report the case of that juvenile to the Director of the Department of Social Services in the county where the juvenile resides or is found. The report may be made orally, by telephone, or in writing. The report shall include information as is known to the person making it including the name and address of the juvenile; the name and address of the juvenile's parent, guardian, or caretaker; the age of the juvenile; the present whereabouts of the juvenile if not at the home address; the nature and extent of any injury or condition resulting from abuse or neglect and any other information which the person making the report believes might be helpful in establishing the need for protective services or court intervention.

The forecast of evidence before the trial court shows one incident of physically offensive contact between Susan B. and a male staff member. We hold that this single, isolated incident of physically offensive conduct, not resulting in any physical harm, does not show a situation involving child abuse requiring a report under the statute. We are careful to note, however, that we do not condone the response of those defendants who either chose to pressure Susan to confront the offending staff member in their (staff member) presence or who apparently failed to vigorously pursue and investigate her complaint. While there was no statutory violation involved, it appears to us that the staff's duty to Susan (and to other female patients in the unit) was compromised by the staff attitude and inaction as to this incident. We nevertheless hold that summary judgment was properly entered for defendants as to this claim.

In the materials before the trial court, it showed that essential elements of each of plaintiffs' claims were either nonexistent or that plaintiffs could not produce evidence to support essential elements of their claims. Summary judgment was therefore properly entered in this case. *Lowe v. Bradford*, 305 N.C. 366, 289 S.E. 2d 363 (1982).

The forecast of evidence before the trial court does not indicate that there exists a class of persons, or any other persons, committed as voluntary patients to Dix Hospital who are or may be entitled to any relief similar to the claims asserted by plaintiffs in this action. *See* G.S. 1A-1, Rule 23 of the Rules of Civil Procedure. Summary judgment was appropriately entered as to this aspect of plaintiffs' action.

The judgment of the trial court must be and is

Affirmed.

Judges VAUGHN and  WHICHARD concur.